UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>    v.<br><br>VALENTIN CARDENAS GONZALES,<br><br>                Defendant. | NO: 2:13-CR-0022-TOR<br><br>ORDER DENYING § 2255 MOTION |

BEFORE THE COURT is Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 170). Defendant is represented by Matthew Campbell of the Federal Defenders of Eastern Washington and Idaho. Assistant United States Attorney Allyson Edwards now represents the United States. The Court—having reviewed the motion, the response and reply, and the record and files therein—is fully informed. For the reasons discussed below, the Court denies Defendant's Motion.

Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts, this Court determines that no evidentiary hearing

is warranted.  The transcripts of the proceedings and sworn testimony provided at trial resolve this motion.

## ISSUES PRESENTED

1. Whether the introduction of a child victim's prior consistent statement that Defendant committed under-the-clothes touching constitutes constitutionally ineffective assistance of counsel when Defendant also confessed to under-the-clothes touching of that child.

2. Whether counsel provided constitutionally ineffective assistance on direct appeal by failing to argue that the exclusion of alleged exculpatory statements Defendant made during an interview with law enforcement violated his due process rights such that other portions of his confession should have been considered in fairness, not just the inculpatory statements.

## BACKGROUND

On July 25, 2013, the grand jury returned a Second Superseding Indictment which charged the Defendant with three counts of Aggravated Sexual Abuse of a Minor in violation of 18 U.S.C. § 2241(c) (skin-to-skin contact) (Counts 1, 2 and 4), and two counts of Abusive Sexual Contact with a Minor in violation of 18 U.S.C. § 2244(a)(5) (through-the-clothing contact) (Counts 3 and 5).  ECF No. 68. These charges encompass three different victims under the age of twelve, on five separate occasions.

The Government filed a motion in limine to preclude Defendant from eliciting on cross-examination from the agents that interviewed him, self-serving hearsay statements of the Defendant.  ECF No. 82.  The Government argued that

while the Defendant's statements are not hearsay when offered by the Government

as admissions by party opponent pursuant to Fed. R. Evid. 801(d)(2)(A), such

statements, when offered by the Defendant for their truth, are inadmissible hearsay

pursuant to Fed. R. Evid. 801(c). The Government did not identify any of these

statements it sought to preclude.

Again, without any reference to any particular statement or exculpatory

evidence, at the pretrial conference Defendant's counsel argued that:

> "the failure to introduce those statements would somehow or other
> suggest to the jury that the defendant in some form or other doesn't
> have any explanation for his behavior here. And it would be
> incomplete to allow the government to only introduce those
> statements that are negative while allowing -- and not allowing the
> introduction of those statements about my wife came into the house
> when that occurred.
>
> * * *
>
> And certainly, one of these allegations involves the claim that he was
> -- the girl did not have clothes on or was not dressed at the time that
> these occurrences occurred. The wife, when she was interviewed
> regarding that, said that she had come home. She doesn't remember
> any occasion when there were children in the house that were not
> dressed or were disrobed or something of that nature. And the
> defendant, I think, indicated that – I think the police made some sort
> of an accusation that – that the children were not dressed when the --
> when the woman came -- the mom came -- the wife came home. And
> his statement indicated that he -- that she was dressed and that that did
> not happen, which is supported by the statement that the wife made to
> law enforcement when they went and interviewed her and –
> suggesting that these are merely self-serving statements and not
> statements of what his recollection of the events is, although I have to
> say, Your Honor, he made a lot of very negative statements.
>
> The statements that he made that were helpful to him in this case are
> not that many or not that great. But to not allow the introduction of the

complete interview I think would not be a complete and fair expression of what occurred for the jury and, indeed, *might deny the defendant his due process rights* as to the interview that occurred in this case.

ECF No. 151 at 81-82 (emphasis added). This Court ruled:

The defendant does have the option -- he can call his wife and he can call, if he so elects, to testify himself. So it isn't denial of his due process rights. It only assures that those statements that are made are sworn to by individuals capable of testifying and being subject to cross-examination. And so it's not a denial of due process to require him to put on witnesses to testify to that. So I will grant ECF No. 82, the motion in limine brought by the government.

ECF No. 151 at 83.

On September 16, 2013, the jury trial commenced. At trial, FBI Special Agent Jason Benedetti testified about Defendant's admissions made during an interview with law enforcement on January 17, 2013. Defendant admitted being sexually attracted to children for as long as he could remember. ECF No. 152 at 51 (sealed transcript). With respect to victim E.A., Defendant admitted touching her a total of six times in a sexual way. *Id*. Defendant described an incident occurring in about July 2012 when he was driving E.A. home from his house (Count 1). Defendant asked E.A. to take her pants down and he reached over and rubbed her vaginal area with his hand and then asked her to take her hand and rub his penis over his jeans – which she did. *Id*. at 56. Defendant described another incident when he was alone with E.A. in the living room of his home and he asked

E.A. to take her pants down, which she did and he then rubbed her vaginal area, skin-to-skin contact. *Id*. at 54-55 (Count 2). Defendant demonstrated how he used his right hand to accomplish this. *Id*. at 55.

Defendant also admitted that when K.A. came over, he would touch her but then Defendant immediately stated that he never touched her, he just liked to look at her. *Id*. at 58.

Defendant also admitted to touching N.B. in a sexual way. *Id*. at 70. He described an incident when he was repairing her bike, found her standing in his kitchen looking out the window, away from him. *Id*. He came up behind her, reached his hands around her and touched her vaginal area over her clothes. *Id*. She turned around with a mad look on her face and he backed off. *Id*.

On cross-examination, it was established that there was no recording of Defendant's interview. *Id*. at 106. The cross examination by the defense challenged the bias of tribal members, *id*. at 86-90, the opportunity of the girls to fabricate and to talk with each other about the investigation, *id*. at 89, the negative interactions between Defendant's family and one of the victim's father, *id*. at 91, and established that the Defendant had been cooperative throughout the interview, *id*. at 108. No exculpatory or other statements of the Defendant were sought to be introduced.

E.A. testified at trial that she was then 10-years old. ECF No. 128 at 6 (sealed transcript). E.A. explained that she used the words "private" for the circle she placed on the genitals of a drawing of a nude female child and "bottom" for the circle she placed on the drawing of the backside of a nude female child. *Id*. at 22. She testified that the Defendant touched her "privates or bottom" three times on the top of her clothes. *Id*. at 26-27. When asked what part of her body was touched, E.A. said she did not want to talk about it. *Id*. at 27. She described a time, when it was cold, that Defendant was driving her home and touched her privates. *Id*. at 28-29 (Count 1). E.A. drew on Exhibit 15 the place Defendant touched her, circling the genital area on a drawing of a nude female child. She testified that he touched her two other times in his truck, too. *Id*. at 29.

N.B. testified at trial that she was then 12-years old. ECF No. 153 at 18 (sealed transcript). She testified that when she was eight-years old the Defendant touched her butt. *Id*. at 29-30 (Count 3). N.B. testified that she was sitting on Defendant's couch while wearing her swimsuit while her friend was using the Defendant's bathroom. *Id*. at 23-25. Defendant sat next to her and grabbed her butt and swimsuit. *Id*. at 23, 28-29.

K.A. testified at trial that she was then 9-years old. ECF No. 129 at 8 (sealed transcript). She testified that Defendant touched her in a bad way during the summer when she was five years old. *Id*. at 23 (Count 5). She circled the

genital area on a drawing of a nude female child. K.A. testified that Defendant touched her in a bad way during the summer when she was seven, too. *Id*. at 26 (Count 4). She used Exhibit 16, a drawing of a nude female child to mark where Defendant touched her. *Id*. at 28. On cross-examination, K.A. testified that she had clothes on when Defendant touched her. *Id*. at 35:

The Government sought to admit the entire audio and video-taped, pretrial interview of K.A. The Court sustained the Defendant's objection to its admission. ECF No. 153 at 188. The Government then sought to introduce the entire audio and video-taped, pretrial interview of E.A. The Court sustained the Defendant's objection to its admission. *Id*. at 189-90. A hearing was then held outside the presence of the jury. *Id*. at 191. The Court expressed its assumption that the Government was attempting to offer the interviews under Rule 801(d)(1)(B)–prior consistent statements of a declarant offered to rebut an express or implied charge of recent fabrication or recent improper influence or motive. *Id*. at 192. The Court observed that the interview recordings were not confined to that minute admissibility provision as an exception to the hearsay rule. *Id*. ("You just can't take a wheelbarrow and dump in all the evidence in the case now.").

The Government explained that it would offer the statements as prior consistent statements, *id*. at 194, and narrow the testimony to that specific issue, *id*. at 195. Defendant's counsel reiterated the inadmissibility of the recordings, but

did not object to the Government's question concerning prior consistent statements. *Id*. 196-99.

Stephanie Knapp, a child and adolescent forensic interviewer for the Federal Bureau of Investigation, testified that E.A. told her Defendant requested her to come into the house, he then put his hand down her pants, under her undies and then moved his hand. ECF No. 153 at 202. There was no objection to this testimony and neither party sought a limiting instruction. This testimony concerned Count 2, the living room touching, not any other count of the Indictment.

At the close of the case, on September 18, 2013, the district court granted the Defendant's Federal Rule of Criminal Procedure, Rule 29 motion as to Count 4, which charged Aggravated Sexual Abuse of a Minor in violation of 18 U.S.C. § 2241(c), and instructed the jury on the lesser included offense of Abusive Sexual Contact with a Minor in violation of 18 U.S.C. § 2244(a)(5). The Court found insufficient evidence of skin-to-skin contact to support the aggravated sexual abuse charge as to Count 4. ECF No. 154 at 3-4. The jury was also instructed as to the lesser included offenses for Counts 1 and 2 concerning E.A. Counts 3, 4 and 5 proceeded as abusive sexual contact charges (touching through the clothes). The jury found the Defendant guilty on Counts 1, 2, 3, and the lesser included offense charged in Count 4. The jury found the Defendant not guilty on Count 5.

On December 4, 2013, the Defendant was sentenced to concurrent 360-month terms of incarceration on each of the four counts. Defendant appealed his conviction to the Ninth Circuit. The Circuit held:

> The district court erred by admitting E.A.'s hearsay statement to the agent that she was touched under her clothing. That error was plain for the reason that follows: Prior consistent statements of a witness are admissible to rebut a charge of recent fabrication or improper motive or to rehabilitate the witnesses's credibility when attacked on another ground. Fed. R. Evid. 801(d)(1)(B). But this was not a prior consistent statement because E.A. testified at trial that Gonzales touched her over her clothes, which is inconsistent with Knapp's testimony that E.A. reported under-the-clothes touching.

> This error was prejudicial and affected Gonzales's substantial rights, as without Knapp's testimony, the government likely would not have presented sufficient evidence to corroborate Gonzales's admission that he touched E.A. under her clothes. *See United States v. Norris*, 428 F.3d 907, 914–15 (9th Cir. 2005) (cit*ing United States v. Lopez-Alvarez*, 970 F.2d 583, 592 (9th Cir. 1992)); *United States v. Corona-Garcia*, 210 F.3d 973, 978 (9th Cir. 2000). Considering the total circumstances of this case, however, we conclude that the error does not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Id*. (*quoting Marcus*, 560 U.S. at 262). We have no reason to believe that Agent Knapp's statement was unreliable, particularly because she made it after reviewing the interview transcript to refresh her memory about which child alleged under-the clothes touching. Nor can we conclude that E.A.'s out-of-court statement to Knapp was unreliable, given both that her contradictory in-court statement may have merely reflected a disinclination to discuss the details of the abuse allegations and that an FBI agent also testified at trial that Gonzales had previously confessed to him in an interview that Gonzales had touched E.A. under her clothing. Under these circumstances, we do not find the error to be so serious as to warrant reversal on plain error review.

ECF No. 168 at 3-5 (footnotes omitted).

As to the exclusion on cross-examination of Defendant's hearsay

exculpatory statements, the Ninth Circuit rejected a right to confrontation

challenge but observed in a footnote of their memorandum opinion that Defendant

> "has not distinctly challenged this limitation as a violation of due
> process, so we do not discuss that issue. *Cf. . . . United States v.
> Beneviste*, 564 F.2d 335, 339–42 (9th Cir. 1977) (holding that
> excluding declarant's exculpatory out-of-court statements while
> admitting her inculpatory out-of-court statements deprived defendant
> of a fair opportunity to defend himself)."

ECF No. 168 at 2.  The Ninth Circuit affirmed Defendant's convictions and

Defendant then brought this section 2255 motion now before the Court.

## DISCUSSION

### 1. Ineffective Assistance of Counsel

The Sixth Amendment to the Constitution provides that criminal defendants

"shall enjoy the right to have the assistance of counsel for his defense."  U.S.

Const. amend. VI.  Effective assistance of counsel is analyzed pursuant to the

doctrine set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  According to

*Strickland*, Defendant bears the burden of establishing two components to an

ineffectiveness inquiry.  First, the representation must fall "below an objective

standard of reasonableness."  466 U.S. at 687–88.  Courts scrutinizing the

reasonableness of an attorney's conduct must examine counsel's "overall

performance," both before and at trial, and must be highly deferential to the

attorney's judgments.  *United States v. Quintero-Barraza*, 78 F.3d 1344, 1347–48 (9th Cir. 1995) (quoting *Strickland*, 466 U.S. at 688–89).  In fact, there exists a "strong presumption that counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  *Id*. (citation omitted).

If the defendant satisfies the first prong, he must then establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Quintero-Barraza*, 78 F.3d at 1347 (quoting *Strickland*, 466 U.S. at 694).

Defendant identifies two instances where he contends counsel was ineffective in violation of his Sixth Amendment right.

## A. Introduction Child Victim's Prior Statement That Defendant Committed Under-the-Clothes Touching.

Relying on the Ninth Circuit's decision as law of the case, Defendant contends that he has largely proved his claim of ineffective assistance of counsel. Defendant argues that the Ninth Circuit determined that Stephanie Knapp's testimony did not constitute a prior consistent statement, but rather an inadmissible prior inconsistent statement.  The Ninth Circuit found the admission of this evidence was error and that it was plain.  The Ninth Circuit reasoned:

> Prior consistent statements of a witness are admissible to rebut a
> charge of recent fabrication or improper motive or to rehabilitate the
> witnesses's credibility when attacked on another ground. Fed. R.
> Evid. 801(d)(1)(B). But this was not a prior consistent statement
> because E.A. testified at trial that Gonzales touched her over her
> clothes, which is inconsistent with Knapp's testimony that E.A.
> reported under-the-clothes touching.

ECF No. 168 at 3. The Ninth Circuit held this error to be prejudicial, but that it did

not seriously affect the fairness, integrity or public reputation of judicial

proceedings, and thus was not reversible error. *Id*. at 4-5. On these findings,

Defendant contends he has established the *Strickland* prejudice prong, a reasonable

probability the result of the proceeding would have been different. ECF No. 170-1

at 17, 19.

The Government contends that regardless of trial counsel's failure to object,

"the evidence could have been properly admitted, not as a consistent statement, but

rather as extrinsic evidence of a witness's prior inconsistent oral statements,

pursuant to FRE 613(b)." ECF No. 185 at 10. Curiously however, the

Government also recognizes that "[i]f the prior inconsistent statement is not under

oath, the extrinsic evidence of the statement is not substantive evidence." *Id*. at 12.

Moreover, no limiting instruction was given nor requested by either party. The

Government then contends that Defendant cannot demonstrate prejudice where

there was sufficient evidence for the jury to find him guilty, even without the

admission of the prior inconsistent statement.  *Id.* at 15.  That, of course, is not the

test for prejudice under *Strickland*.

First, this Court rejects the Government's misplaced argument that the

statements were offered to impeach E.A.  Nothing of the sort happened at trial and

Rule 613(b) would not have allowed extrinsic proof of the statements through Ms.

Knapp's testimony because as such they would be considered hearsay.  Rule 613

may have allowed the statements to be used to confront E.A. on examination or

cross-examination, but extrinsic evidence of the statements would not be allowed

unless Federal Rule of Evidence 807 (Residual Exception) were invoked.  Even if

the Government intended to impeach E.A., the statements then could not be used

as substantive evidence and they would therefore be worthless to the Government

proving its case.  The Government's litany of cases supporting its Rule 613

argument are all inapposite and deserve no further attention.

At trial, the Government explained that it would offer the statements as prior

consistent statements, ECF No. 153 at 194, and narrow the testimony to that

specific issue, *id.* at 195.  This Court only allowed the statements to be introduced

to rebut an express or implied charge of recent fabrication or recent improper

influence or motive.  *Id.* at 192.  Consistent statements are admissible, they are not

hearsay and are substantive evidence.  *See United States v. Gonzalez*, 533 F.3d

1057, 1061 (9th Cir. 2008).  The reason this Court allowed the statement is that

while E.A. testified that she was touched over her clothes, she also later testified that she did not want to talk about it, she drew on the monitor in front of the jury where she was touched and then circled the vaginal area on the drawing of a naked female child where she was touched, Exhibit 15.  Through both her verbal testimony and drawing, she communicated to the jury her vaginal area was touched by Defendant.  The date of the FBI interview was important in establishing that her recitation of the facts had not changed during the interim when defense counsel inferred that the girls could have gotten together to fabricate their stories.

The problem for this Court is that the Ninth Circuit did not appear to consider the physical evidence, specifically the drawing in combination with E.A.'s statement that she did not want to talk about it–so she showed the jury where she was touched.  The Ninth Circuit held her prior statement of under-the-clothes touching was inconsistent with her testimony and thus, inadmissible.  This Court is now bound by the law of the case doctrine.  This Court must now assume the testimony was erroneously admitted as plain error on behalf of Defendant's counsel.  Thus, despite the legitimate reason this evidence was introduced, this Court must now assume deficient performance, the first prong of the *Strickland* test is satisfied.

Next, the Court must determine whether Defendant has been prejudiced–- whether "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id*. at 694. In this case, that means whether the jury would have had a reasonable doubt respecting whether the government had proven the conduct as to Count 2, either the greater offense, under the clothes touching or the lesser offense, over the clothes touching.

This Court rejects the Government's misconstrued prejudice argument. "Sufficiency of the evidence" to support guilt, even without the admission of the prior inconsistent statement, is not the test for prejudice articulated by *Strickland*.

This Court sat through the entire trial, observed the demeanor, cadence and attitude of every witness while testifying, including the jurors during trial. FBI Special Agent Jason Benedetti testified in detail about Defendant's admissions made during an interview with law enforcement on January 17, 2013. Defendant admitted being sexually attracted to children for as long as he could remember. ECF No. 152 at 51. With respect to victim E.A., Defendant admitted touching her a total of six times in a sexual way. *Id*. Defendant described one incident when he was alone with E.A. in the living room of his home and he asked E.A. to take her pants down, which she did and he then rubbed her vaginal area, skin-to-skin contact. *Id*. at 54-55 (Count 2). Defendant demonstrated how he used his right hand to accomplish this. *Id*. at 55. This testimony was detailed, compelling and

believable. Indeed, it sealed Defendant's fate as these were admissions from Defendant's own mouth made to a credible FBI agent.

At the September 2013 trial, E.A. testified that she was then 10 years old. ECF No. 128 at 6. E.A. explained that she used the words "private" for the circle she placed on the genitals of a drawing of a nude female child and "bottom" for the circle she placed on the drawing of the backside of a nude female child. *Id*. at 22. She testified that the Defendant touched her "privates or bottom" three times on the top of her clothes. *Id*. at 26-27. When asked what part of her body was touched, E.A. said she did not want to talk about it. *Id*. at 27. She described a time, when it was cold, that Defendant was driving her home and touched her privates. *Id*. at 28-29. E.A. drew on Exhibit 15 the place Defendant touched her, circling the genital area on a drawing of a nude female child. She testified that he touched her two other times in his truck, too. *Id*. at 29.

E.A. was believable, yet embarrassed and timid on the witness stand. She understandably did not enjoy talking about the molestation in front of a crowd of adults in an intimidating court room, facing the man accused of this conduct. The jury watched her intently and followed her testimony and drawings on the screen which were transmitted to television monitors inside the jury box and on paper exhibits. The jury seemed to fully understand her testimony and demonstration. The Court understood what she was saying and what she was showing the jury.

Her testimony, in combination with the testimony of Special Agent Benedetti corroborated Defendant's confession, he had touched her under the clothes.

While outside the presence of the jury the Court and counsel extensively discussed the proposed testimony of Stephanie Knapp, but her testimony to the jury was extremely brief. The question and answers to Ms. Knapp on this subject only concerned one incident:

Q:    Does that refresh your memory as to whether or not [E.A.] disclosed whether she was touched on her skin or somewhere else?

A:    Yes, it does.

Q:    All right. So tell us what you remember, then, about that.

A:    So she describes how the incident took place and how she walked into the house and was requested to come into that area -- well, shed -- and then the house; and that, from her frame of reference, that the touching happened; that it happened with him putting his hand down her pants, under her undies, and then moving his hand. And that's how the touching happened.

ECF No. 153 at 202.

Thus, even if the Court assumes Stephanie Knapp's brief testimony confirming under the clothes touching of E.A. was erroneously admitted as to Count 2, it had no real or substantial effect on the jury's verdict. The jury obviously compartmentalized all the evidence concerning each count individually.

*See* Jury Instruction No. 9.  The jury considered and rejected the lesser included offense as to Counts 1 and 2.  The jury acquitted the Defendant of Count 5.  This Court finds no Constitutional prejudice in the admission of E.A.'s prior statement to Stephanie Knapp.

### B. Exclusion of Defendant's Exculpatory Hearsay Statements.

Defendant contends his counsel was ineffective by failing to pursue a due process violation in his direct appeal because at trial he was prohibited from introducing his exculpatory statements, after the government introduced his inculpatory statements.  ECF No. 170-1 at 21.  Without any proffer of evidence or citation to the record, Defendant contends he was prohibited from "inquiring of interviewing agents regarding statements made by Mr. Gonzales that the incidents involved touching over the clothes."  *Id*. at 21.  He contends that his counsel was constitutionally ineffective on direct appeal for failing to raise this issue embedded in the Rule of Completeness.

The Government argues that Defendant is not allowed to introduce his own self-serving hearsay statements under Federal Rule of Evidence 801(c), (d)(2)(A).  Further, the Government contends the cases supporting a due process violation involved the failure to admit complete statements of unavailable witnesses, not the defendant.  Thus, the Government contends there was no issue worth pursuing on appeal, no error and certainly no ineffective assistance of counsel.

The Rule of Completeness, Federal Rule of Evidence 106, by its terms, "applies only to written and recorded statements." *United States v. Liera-Morales*, 759 F.3d 1105, 1111 (9th Cir. 2014) (quoting *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (citing *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996)). Here, there is no written or recorded statement by Defendant so the Rule of Completeness does not apply.

Observing that two other circuits have recognized the principle underlying Rule 106 also applies to oral statements, the Ninth Circuit still held that out-of-court statements constituting hearsay are inadmissible, regardless of Rule 106. *Collicott*, 92 F.3d at 983 and n.12. In that case, the Ninth Circuit also held that the "complete statement did not serve to correct a misleading impression of a prior statement created by taking [the witness's] comments out of context." *Id*.

*Collicott* involved the introduction of a testifying witness's out-of-court statements through the testimony of a law enforcement officer. Unlike *Collicott* and precisely like the instant case, *Ortega* involved introduction of the defendant's oral confession through the testimony of an INS officer. *Ortega*, 203 F.3d at 682. The Ninth Circuit affirmed the exclusion of Ortega's non-self-inculpatory statements because "[i]f the district court were to have ruled in his favor, Ortega would have been able to place his exculpatory statements before the jury without subjecting himself to cross-examination, precisely what the hearsay rule forbids."

*Id.* (internal brackets and citation omitted). "Even if the rule of completeness did apply, exclusion of Ortega's exculpatory statements was proper because these statements would still have constituted inadmissible hearsay." *Id.* (citing *Collicott*, 92 F.3d at 983). "Ortega should not be allowed to use the Confrontation Clause as a means of admitting hearsay testimony through the 'back door' without subjecting himself to cross-examination." *Id.* at 683.

Likewise, the Ninth Circuit in *Liera-Morales* recognized that the Rule of Completeness serves only to correct a misleading impression created by taking something out of context. *Liera-Morales*, 759 F.3d at 1111 (citing *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014).

Here at the pretrial conference, Defendant's counsel intimated that Defendant's wife came home and did not see the children undressed. *See* ECF No. 151 at 81-82. Defendant's counsel then argued:

> But to not allow the introduction of the complete interview I think would not be a complete and fair expression of what occurred for the jury and, indeed, *might deny the defendant his due process rights* as to the interview that occurred in this case.

*Id.* (emphasis added). This Court ruled:

> The defendant does have the option -- he can call his wife and he can call, if he so elects, to testify himself. So it isn't denial of his due process rights. It only assures that those statements that are made are sworn to by individuals capable of testifying and being subject to cross-examination. And so it's not a denial of due process to require

him to put on witnesses to testify to that. So I will grant ECF No. 82, the motion in limine brought by the government.

ECF No. 151 at 83. The only proffered evidence before the Court then and now does not correct a misleading impression created by taking some statement of the Defendant out of context. No evidentiary error has been shown and thus, no ineffective assistance of counsel on appeal can be shown.

Defendant's citations to *United States v. Benveniste*, 564 F.2d 335 (9th Cir. 1977) and other cases are inapposite. *Benveniste* involved the introduction of "accusatory hearsay" of an unavailable witness without also introducing the "exculpatory hearsay." *Id*. at 342. Here, Defendant was not prevented from presenting witnesses in his own defense. Defendant and his wife both attended the trial and were available to testify, so there was no unfairness rising to the level of a due process violation. There was no ineffective assistance of counsel on appeal.

**2. Certificate of Appealability**

A petitioner seeking post-conviction relief may appeal a district court's dismissal of the court's final order in a proceeding under 28 U.S.C. § 2255 only after obtaining a certificate of appealability ("COA") from a district or circuit judge. 28 U.S.C. § 2253(c)(1)(B). A COA may issue only where the applicant has made "a substantial showing of the denial of a constitutional right." *See id.* § 2253(c)(2). To satisfy this standard, the applicant must "show that reasonable

jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted).

The Court concludes that jurists of reason could disagree with the Court's resolution of Defendant's first constitutional claim or conclude the issue presented deserves encouragement to proceed further.

**ACCORDINGLY, IT IS HEREBY ORDERED**:

Defendant's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (ECF No. 43) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and furnish copies to the parties. The Court further certifies that there is a basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). This file and the corresponding civil file shall be **CLOSED**.

**DATED** June 14, 2018.



THOMAS O. RICE
Chief United States District Judge